**Joy GORDON, Appellant,**

v.

**ST. MARY'S HOSPITAL, Respondent.**

**No. WD 40462.**

Missouri Court of Appeals,
Western District.

March 21, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 2, 1989.

Robert K. McDonald, Blue Springs, for appellant.

Terry J. Brady and William F. Ford, Jr., Kansas City, for respondent.

Before NUGENT, P.J., and SHANGLER and CLARK, JJ.

CLARK, Judge.

Joy Gordon filed a medical malpractice suit against St. Mary's Hospital claiming a tetanus injection given her had been improperly administered and had resulted in an infection to her right arm. The cause was submitted to a jury which returned a verdict for the defendant.

The incident of which Gordon complains occurred December 31, 1981 when Gordon appeared at the St. Mary's emergency room for treatment of a bite wound to her finger. She was administered a tetanus toxoid injection by the emergency room nurse, Katherine Teel. By the next day, Gordon's arm was sore and swollen and thereafter, she received treatment for cel-

lulitis, which is a general term meaning inflammation of tissue.

Gordon's petition was filed June 8, 1982 and alleged that St. Mary's employee, nurse Teel, was negligent in that the tetanus injection was administered with a "dirty needle." An amended petition was filed February 16, 1983 repeating the dirty needle allegation and asserting the same complaint. On March 21, 1985, after expiration of the two year statute of limitations applicable to medical malpractice claims, Gordon filed a second amended petition. That petition injected new claims referable to the conduct of emergency room physicians who had examined Gordon and prescribed treatment.[1] Summarized, the added allegations were:

(a) The tetanus shot was contraindicated and unnecessary.

(b) Other medication should have been administered.

(c) Tests for allergic reaction should have been given.

On motion by St. Mary's, the trial court entered what it denominated a partial summary judgment. The effect of the order, however, was to strike those portions of Gordon's second amended petition which introduced into the case any claims of negligence associated with the conduct of physicians at the St. Mary's emergency room and to limit Gordon's cause of action to the conduct of nurse Teel in using a septic instrument to administer the injection. The order was based on the trial court's conclusion that the new allegations presented a cause of action barred by the statute of limitations.

In her first point on appeal, Gordon contends the trial court erred in its entry of partial summary judgment because it failed to give her the benefit of Rule 55.33(c) and the doctrine that where an amended petition states a claim or claims which arise out of the conduct, transaction or occurrence set forth in an original petition, which is timely filed, the amended petition relates back to the date of the filing of the original petition.

Interpretation of Rule 55.33(c) was announced by the Missouri Supreme Court in 1987 in three cases concurrently decided, *Koerper & Co. v. Unitel International, Inc.*, 739 S.W.2d 705 (Mo. banc 1987); *Wells v. Stinson, Mag & Fizzell*, 739 S.W. 2d 706 (Mo. banc 1987); and *Grandview Bank & Trust Co. v. Stinson, Mag & Fizzell*, 739 S.W.2d 707 (Mo. banc 1987). The cases held that when an amended pleading arises out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amended pleading relates back. The so called "same evidence" test taken from *Arpe v. Mesker Brothers Iron Co.*, 323 Mo. 640, 19 S.W.2d 668 (1929), was disavowed. To this date, however, the Supreme Court has given no definitive ruling on the breadth of the terms, "conduct, transaction or occurrence."

St. Mary's argues here that the allegations of Gordon's second amended petition do not amount to the same conduct alleged in the earlier petitions because the act of nurse Teel in administering the tetanus shot negligently was quite different from any oversight by the physicians in respect to their examination and prescription. Indeed, the use of a contaminated needle, as alleged, was unassociated with any act or omission by one of the physicians which, in one sense, amounted to a different transaction or occurrence.

Gordon contends for a more generalized interpretation of the rule which would allow her second amended petition the benefit of "relation back." She suggests that the transaction or occurrence in issue, of which St. Mary's was informed by the first pleading, was her treatment in the emergency room on the date in question. She argues that any conduct by any agent, servant or employee of the hospital at the time of the event was preserved for a later amendment of the claim which need not have been particularized in her first plead-

---

1. The second amended petition also attempted to add American Home Products, the manufacturer of the syringe and antitoxin, under a products liability theory. That effort was abandoned.

ing. For the purposes of this case, however, we need not decide whether Gordon's second amended petition was saved by Rule 55.33.

■ Gordon's claim in her second amended petition asserted liability on St. Mary's because of the treatment rendered "by and through its employees and servants." The allegations and proof were that such treatment was provided by the emergency room personnel on duty at the time Gordon presented herself with the injury to her finger. Those identified were nurse Teel and Dr. Alfonso Martinez. It was Dr. Martinez who made the examination and nurse Teel who administered the tetanus shot. As to any act or omission in diagnosis or prescription, the negligence would be that of Dr. Martinez attributable to St. Mary's only if Dr. Martinez were in the employ of the hospital.

The second amended petition filed by Gordon did not specifically allege that Dr. Martinez was an employee of St. Mary's and Gordon offered no proof to that effect. To the contrary, in St. Mary's answers to plaintiff's interrogatories, the hospital stated that Dr. Martinez was in the employ of Physician Emergency Services, a corporation which contracted with various area hospitals to provide doctors needed to staff emergency rooms. This arrangement was confirmed in testimony at trial by Dr. Arnett, another emergency room physician who later examined Gordon when she returned to the emergency room complaining of swelling in her arm.

Under the additional allegations of the second amended petition, it was incumbent on Gordon to offer evidence showing the medical errors in directing the tetanus injection were committed by the hospital's employee and that St. Mary's was therefore responsible. Not only did Gordon fail to offer any evidence at all to support a claim that Dr. Martinez was St. Mary's agent, the undisputed evidence was that the emergency room doctors were employed by a separate corporation or corporations, with which St. Mary's contracted for services.

It must be noted that the formal arrangement for emergency room staffing would not in all cases and of necessity absolve St. Mary's from vicarious liability. If Gordon were to have alleged and proved that St. Mary's in some manner represented Dr. Martinez to have been a hospital employee and if that representation caused Gordon to submit to treatment in reliance on that representation as an indication of the physician's skill, a case of vicarious liability could have been made. *See Porter v. Sisters of St. Mary,* 756 F.2d 669, 674 (8th Cir.1985). Here, however, Gordon made no such allegation and offered no proof of any conduct causing her to believe, if she did, that Dr. Martinez was employed by St. Mary's. *See also Jeff-Cole Quarries, Inc. v. Bell,* 454 S.W.2d 5 (Mo.1970), as to matters of apparent agency and vicarious liability.

For purposes of appellant's first point, we assume but do not decide that the second amended petition related back to the original date of filing the cause of action to the end that a claim of medical malpractice could be stated involving other acts or omissions by St. Mary's medical staff. The added allegations of the second amended petition failed, however, because the negligent conduct of the emergency room physician was not that of an agent, servant or employee of the hospital and the physician himself had not been sued within the period of statutory limitation. The point is denied.

■ In her second point, Gordon contends the trial court erred when it refused to allow introduction of alleged rebuttal evidence. The issue arose in the following manner. A contested feature of the case was the question of whether Gordon's symptoms were the consequence of an infection, as she claimed, or an allergic reaction to the serum. The morning of the day following completion of her evidence, Gordon said she suffered a bite by a cat and sought treatment at Park Lane Medical Center. There she was given an injection for diphtheria/tetanus (D–T). The next day of trial, after the defense had presented its case, Gordon sought to introduce the

evidence of her D–T shot the day before to show she suffered no allergic reaction, allegedly to disprove the defense claim that an allergy, not an infection, was the source of her problems from the injection at St. Mary's in 1981. The court refused to admit either the Park Lane records or the testimony by a Park Lane doctor.

Several reasons support the trial court in its ruling. Perhaps the most important is the fact that Gordon introduced no evidence to show comparable facts of the two injections. Some seven years had passed between the two events and there was no evidence Gordon was in the same condition or would have reacted similarly on both occasions. There was no evidence either that the injections were administered similarly or under the same conditions. Finally, there was affirmative proof that the tetanus toxoid Gordon received in 1981 and the D–T serum she was given at Park Lane were different medications. The point is denied.

■ Gordon's third point complains of the court's ruling which restricted her cross-examination of defendant's expert witness, Dr. Joseph Waeckerle. On direct examination, Dr. Waeckerle used examples to support his opinion testimony that leaving a needle exposed to the air would not contaminate it. He observed that in cases of emergency room treatment where a patient has wounds dressed, the instruments the physician uses sit on trays exposed to the air and no contamination results. On cross-examination, plaintiff's attorney asked, in a hypothetical question, whether it would be proper in emergency room treatment of a wound caused to the head by a shovel to give the patient antibiotics. Defendant objected on grounds of relevancy and the fact that any claim by plaintiff to a failure by St. Mary's to give alternate or supplementary medication had been stricken. The objection was sustained and, in an offer of proof outside the hearing of the jury, Dr. Waeckerle answered the question in the negative.

The contention that exclusion of the cross-examination testimony was error is without merit. The extent and scope of cross-examination in a civil action is discretionary with the trial court and its rulings will not be disturbed unless an abuse of discretion is clearly shown. This is particularly true in the cross-examination of an expert witness. *Powell v. Norman Lines, Inc.*, 674 S.W.2d 191, 195–96 (Mo.App. 1984).

It appears from counsel's argument to the court in opposition to the objection raised to the cross-examination that the intention of the plaintiff was to show that dressing wounds with exposed instruments not maintained in a sterile container did not result in infection because the treatment also included injections of antibiotics. The further inference would follow that had Gordon been given antibiotics, she also would not have suffered infection.

Defense counsel was apparently concerned that the questioning was proceeding into an area of Gordon's complaint that had been stricken, the claim that supplementary medication should have been administered. Even were it to be concluded that the objection and ruling were premature on this latter subject and that the plaintiff should have been able to discredit Dr. Waeckerle's testimony on potential contamination, plaintiff is entitled to no relief because she can demonstrate no prejudice. In the offer of proof, Dr. Waeckerle denied the routine prescription of antibiotics in emergency room treatment of wounds, thereby eliminating the factual basis for plaintiff's line of approach. If antibiotics are not administered in Dr. Waeckerle's experience under the postulated conditions, then that source may not be credited for prevention of infections from instruments exposed to the air. Appellant's third point is denied.

■ In a fourth point, Gordon argues that the court abused its discretion when it refused to permit inquiry of nurse Teel as to statements made by Dr. Arnett, an emergency room physician at St. Mary's. Gordon claims that if Teel had been permitted to answer, she would have quoted a statement by Dr. Arnett that Gordon had an infection in her arm. The objection was sustained on the ground of hearsay. Ap-

pellant contends the situation constituted an exception to the rule because, as an agent of St. Mary's, Dr. Arnett's statement amounted to an admission.

As we have previously noted, Dr. Arnett was not an employee or agent of St. Mary's but was in the service of a corporation which supplied emergency room staffing for various hospitals. He was therefore not qualified to make admissions binding on St. Mary's.

■ Moreover, although nurse Teel was called as a witness by plaintiff and examined in the case in chief, plaintiff made no offer of proof as to her testimony and we have no way of knowing what her answer would have been as to any admission made by Dr. Arnett. An objection to the exclusion of testimony cannot be considered on appeal absent a showing of what the testimony would have been. *Moore v. Parks,* 458 S.W.2d 344, 348 (Mo.1970).

Finally, plaintiff has no ground to claim prejudice by the ruling. She also called Dr. Arnett as a witness and he testified that Gordon's symptoms were compatible with an infection and he identified an emergency room work slip which mentioned infection. Any added testimony by nurse Teel on the subject would have been merely cumulative.

■ The final point Gordon raises complains of restriction in her cross-examination of Dr. Waeckerle on the subject of contamination of an exposed hypodermic needle by coughing or sneezing from a person in close proximity. The defendant's objection was based on the fact that the hypothetical questions were not supported by any evidence in the case that any person in the emergency room on December 31, 1981 coughed or sneezed while Gordon was receiving treatment for the bite.

It is a matter of fundamental law that a hypothetical question must be based on facts supported by the evidence and assumptions in the question may not be outside the evidence, or reasonable inferences therefrom. *Baker v. Gordon,* 759 S.W.2d 87, 94 (Mo.App.1988). In the absence here

of any supporting evidence at all, Gordon's hypothetical question was plainly improper.

The judgment is affirmed.

All concur.

