STATE of Missouri, ex rel. COUNTY
OF ST. CHARLES, Respondent,

v.

Melvin E. LATHAM, et al., Appellant.

No. 62759.

Missouri Court of Appeals,
Eastern District,
Division Four.

Jan. 11, 1994.

Dale L. Rollings, Kevin A. Suffern, St. Charles, for appellant.

Tracy A. Gilroy, St. Louis, for respondent.

CARL R. GAERTNER, Judge.

Plaintiff, St. Charles County, condemned a 3,480–square–foot strip of land owned by defendants, Melvin, Bernice, Raymond and Betty Latham, in St. Peters, Missouri. The jury returned a verdict, awarding defendants

$28,000 in damages. Defendants appeal from the ensuing judgment.

■ There is little disagreement between the parties regarding the value of the property taken by condemnation. Defendants' expert appraised the value of this property at $24,900, while plaintiff's expert testified to a value of $28,000. The jury awarded the larger amount. The disputed issue is the effect of the partial taking upon the value of the remaining property. When only a portion of a landowner's property is condemned, the landowner is entitled to "the market value of the land actually taken, and the consequential damages, if any, to the remainder of the land caused by the taking." *State ex rel. Hwy. & Transp. Com'n v. Horine*, 776 S.W.2d 6, 10 (Mo. banc 1989). The appropriate measure of these damages is the difference between the fair market value of the entire property before the taking and the fair market value after the taking. *Id.* at 12.

In 1983, defendants purchased a half-acre, triangular parcel of land, which is bounded by another tract of land to the north, Harvester Court to the west, and Harvester Road to the east. Later in 1983, defendants built a 4,370–square–foot Kelly Auto Tire and Repair facility on the land. The building touches the north boundary and extends out to the center of the triangular parcel. Prior to the taking, the building was surrounded to the west, south and east by pavement, which in turn was surrounded by strips of grass. To the west of the building, the property had a driveway and five paved parking spaces. To the south, it had five paved parking spaces and beyond them a grassy triangle where Harvester Court and Harvester Road intersect. To the east, the property had a driveway from Harvester Road and a strip of pavement running the length of the building that extended 27 feet from the building to the grassy strip of land abutting Harvester Road. This side of the building also contained six repair bays where customers' vehicles were serviced.

On June 28, 1991, plaintiff filed a condemnation petition against land parcels adjacent to Harvester Road in order to widen the road by two lanes. The condemned property included a portion of defendants' land, which was divided into three parts: (1) 3,480 square feet of land, which included a strip along the eastern side of the building in front of the repair bays and the grassy triangular strip to the south of the building, in order to establish a permanent new right of way; (2) 1,522 square feet adjacent to the new right-of-way line to establish a permanent utility easement; and (3) 2,569 square feet adjacent to the utility easement to establish a temporary construction easement

The three-day trial commenced on July 13, 1992. During plaintiff's voir dire of the venire panel, plaintiff's counsel questioned a venireman about his experience in a previous condemnation case. The venireman responded that it took three years for the case to come to trial and that "it was quite an issue trying to figure prices three years ago against the present." Plaintiff's counsel then replied: "Three years ago in that case—you must have had the date of taking when the property was acquired, and some monies changed hands at that point. The date of taking in this case ... was July 10th, 1991."

Defendants immediately objected and moved for a mistrial, charging that informing the jury panel that money had already been exchanged between the parties as a result of the condemnation was prejudicial. The trial court denied defendants' motion but required plaintiff's counsel to cure the prejudicial remark by telling the venire panel that defendants did not receive any money on the date of condemnation and that the jury would determine the amount of compensation plaintiff should pay defendants for the taking.

Later during voir dire, plaintiff's counsel told the venire panel the case would involve a discussion of dedication. She then questioned the panel about their knowledge of and prejudices regarding dedications. This exchange prompted defendants to make an oral motion in limine to restrict plaintiff from "attempting to claim some form of dedication, because there is no such issue in this lawsuit."

Plaintiff countered that in 1983 it requested that defendant dedicate a 10–foot–wide strip of land adjacent to Harvester Road. Plaintiff further informed the court it intend-

ed to introduce a site plan for the construction of the repair facility, which defendants' engineers drew in 1983 and submitted to St. Charles County Planning Engineer Joe Nichols to obtain approval for construction of defendants' repair facility. The site plan depicted the proposed dedication area and contained a stamp signed by Nichols stating that approval of the plan was subject to a dedication of the 10–foot strip. Plaintiff argued that although the dedication never occurred, this evidence would be used not to escape liability or payment for condemning the 10–foot strip but to rebut defendants' claim that the taking rendered their property functionally obsolete. The trial court denied defendants' motion, ruling that both parties were free to develop arguments as to whether defendants knew of the dedication request and developed their property in reliance on their knowledge because it was a factual issue for the jury to decide.

In their presentation of evidence, defendants attempted to establish that the taking rendered the remainder functionally obsolete because they lost parking spaces and the ability to expand parking in the future plus access to the repair bays was extremely restricted and potentially impossible.

■ Defendants' engineering expert, David Wehmeyer, testified that the paved area in front of the repair bays needed to be 28 feet wide to provide optimum access to the bays. This paved area was 27 feet wide before the taking and 35 to 39 feet wide after the taking. This increase resulted from the fact that the county paved over a ten-foot area impressed with a utility easement between the enlarged highway and the pavement in front of the bays. However, Wehmeyer testified that the new configuration of the pavement included curbing and a water-catch basin which necessitated some maneuvering in order to access the first two repair bays. He further testified that if above-ground utilities were constructed on the permanent utility easement the paved area

would be reduced to 24 to 28 feet wide, making access to all the bays more difficult.[1]

Defendants' real estate appraiser, Ralph Prinster, testified that the loss of parking and the ability to expand parking, the restriction on access to the first two bays, and the potential loss of use of the utility easement area caused incurable functional obsolescence in the remaining property. Specifically, Prinster concluded that these effects of the taking made the building too big for the remainder and thus prohibited the property from sufficiently performing its best use—as an automotive service center.

Prinster then testified the property had a fair market value of $314,300 before the taking and $163,900 after the taking, resulting in $150,400 in damages. He attributed $24,900 of the damages to the land actually taken and $125,500 for severance damages.

In order to rebut defendants' claim of functional obsolescence, county planning engineer Nichols identified plaintiff's Exhibit C, a site plan prepared by defendants' engineers and submitted to the county in 1983 as part of the application for a building permit. The site plan showed a 24–foot paved area in front of the bays, abutted by a ten-foot strip. Mr. Nichols had stamped upon the site plan that its approval was subject to the dedication of the ten-foot strip. In fact, this dedication never occurred. Defendants objected to the introduction of Exhibit C, arguing that the jury might conclude that the county did not owe any compensation for the taking of the ten-foot strip. The court overruled this objection and admitted the exhibit only after requiring the obliteration of Nichols' stamp of approval subject to dedication.

■ Defendants' first point on appeal charges trial court error in the admission of Exhibit C and the related testimony of Nichols. The admission of evidence in a condemnation case is within the discretion of the trial court and will not result in a reversal unless there is substantial or glaring injustice. *State ex rel. Hwy. and Transp. Com'n*

---

1. In evaluating the value of the remaining property in a condemnation case, the landowner is entitled to assume the condemnor will make full use of any easement taken. *Missouri Public Service Co. v. Argenbright*, 457 S.W.2d 777, 783

(Mo.1970); *Union Electric v. Levin*, 304 S.W.2d 478, 481 (Mo.App.1957); *State ex rel. Mo. Hwy. & Transp. Com'n v. Johnson*, 287 S.W.2d 835, 839 (Mo.1956).

*v. Kuhlmann,* 830 S.W.2d 569, 571 (Mo.App. 1992). Because the only issue in a condemnation case is that of damages, *State ex rel. State Hwy. Com'n v. Thurman,* 552 S.W.2d 42, 44 (Mo.App.1977), the admissibility of evidence depends on whether it tends to aid the jury in determining value and thus resolving the issue of damages. *State ex rel. Mo. Hwy. and Transp. Com'n v. McNary,* 664 S.W.2d 589, 594 (Mo.App.1984) (citing *State ex rel. Hwy. Com'n v. Texaco, Inc.,* 502 S.W.2d 284, 288 (Mo.1973)). Therefore, all evidence of value which an ordinarily prudent person would consider in reaching a conclusion regarding the fair market value of the condemned property is admissible. *Del–Mar Redevelopment Corp. v. Associated Garages, Inc.,* 726 S.W.2d 866, 871 (Mo.App.1987).

■ Defendants argue that Exhibit C and Nichols' testimony were misleading and confusing to the jury concerning plaintiff's liability to defendants for the taking of this ten-foot strip. We find no support for this contention in the record. Abiding by the trial court's directive, plaintiff's attorney in no way suggested that defendants were not entitled to compensation for this taking. It was clearly pointed out that the contemplated dedication never occurred. The jury was clearly informed that the purpose of the evidence was to show that after the condemnation defendants were left with exactly what they had expected to have in 1983 when they submitted the site plan to the county. The plan demonstrated that they contemplated operating with 24 feet of pavement between the bays and a ten-foot easement, whereas after the taking they had a larger paved area in front of four of the six bays and at least as much in front of the other two. Thus, no more maneuvering was required after the condemnation than before. That the jury returned a verdict assessing damages only for the value of the property taken does not demonstrate confusion. Rather, it shows only that the jury rejected defendants' contention of functional obsolescence caused by the taking of the ten-foot strip and the jury's acceptance of plaintiff's contention that defendants' were left with exactly what they expected to have from the beginning.

■ Defendants' second point asserts the verdict was grossly inadequate because of the omission of consequential damages to the remaining property caused by restricted accessibility to the facility and by loss of parking. Inherent in the jury's verdict is its rejection of defendants' contention concerning restricted access to the bays, the point which we have addressed above. There was evidence that in addition to the parking spaces on paved areas to the west and south of the building defendants had parked cars on the grassy areas, some of which were taken in the condemnation. However, the evidence also showed that such parking was in violation of the ordinances of the City of St. Peters, which had annexed the area after the construction of the facility. Because legal parking was only permitted upon paved areas, the jury could well have concluded that the condemnation of some grassy areas did not cause an adverse effect upon the future operations of the business. There was ample evidence to support the jury's rejection of defendants' contention that its facility had been rendered useless for its intended purpose.

■ Finally, defendants claim the trial court erred in refusing to grant their motion for mistrial because of the implication during voir dire that plaintiff had already paid defendants damages for the condemnation.

In *State ex rel. Mo. Hwy. & Transp. Com'n v. Williams,* 690 S.W.2d 836 (Mo.App. 1985), we addressed a similar incident in which a condemnee moved for a mistrial after condemnor's counsel, while cross-examining a witness, mentioned the date of taking and implied that the condemnor already paid damages for the taking. *Id.* at 837. We found no abuse of discretion by the trial court for refusing to grant a mistrial and ordering condemnor's counsel to correct any misunderstanding by stating to the witness and jury that he did not mean to imply that condemnee had been compensated for the condemnation. *Id.* at 837–38.

We also find no abuse of discretion by the trial court in the present case for refusing to grant a mistrial and ordering a similar curative statement to the venire panel. No evidence of the commissioners' award was pre-

sented at trial, and neither party made further references to it. This point is denied.

The judgment of the trial court is affirmed.

GRIMM, P.J., and AHRENS, J., concur.

