**STATE of Missouri, ex rel., MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Plaintiff–Respondent,**

v.

**OUR SAVIOR LUTHERAN CHURCH, et al., Exceptions of David J. Barton, et al., Defendants–Appellants.**

**No. 68325.**

Missouri Court of Appeals, Eastern District, Division Five.

April 2, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 6, 1996.

Application to Transfer Denied June 25, 1996.

Jerome Wallach, St. Louis, for Appellants.

R.B. Regan, Assistant Counsel, Rich Tiemeyer, Chief Counsel, Mo. Highway & Transp. Comm'n, Chesterfield, for Respondent.

HOFF, Judge.

Barbara and David Barton (Bartons), owners of property, appeal from a judgment entered on a jury verdict which awarded them $350,000 damages for land taken by the Missouri Highway and Transportation Commission (Commission). We affirm.

By a petition filed on July 2, 1992, the Commission sought to obtain by condemnation approximately 50,857 square feet of the Bartons' twenty acre tract of land. Condemnation Commissioners were duly appointed, prepared a report and made an award of $450,000. Both parties filed exceptions to the Commissioners' report and the question was tried by jury.

The property is located between Route 141 and Route 30. It is zoned for multi-family residential use but, as of the date of the taking, was undeveloped. Before the taking, the property had direct access to Route 141 and to an outer service road of Route 30. The Commission condemned the property's frontage along Route 141 and, as a result, direct access was cut off from the Bartons' remaining property to Route 141.

The Bartons produced evidence regarding the property's commercial viability. They called three expert witnesses who testified that prior to the taking the highest and best use of the property was commercial and a reasonable likelihood existed the property could be rezoned to a commercial use. Mr. John King, an attorney practicing in land zoning, estimated the property would be worth $5,000,000 if rezoned commercial. As a result of the taking and the loss of direct access to Route 141, Mr. King testified it was unlikely the property could be rezoned as commercial. Consequently, he opined the property was only worth $1,000,000 after the taking. During cross-examination, Mr. King acknowledged a developer considers development costs when he looks at property.

The Commission presented evidence through two witnesses. Mr. Glenn Borgard, a licensed professional engineer, testified about the costs involved in developing the property for commercial use. He testified that although it was possible to build a commercial development on the property, the total costs of site preparation for the property were approximately $4,533,675. These costs included clearing, demolition, earthwork, storm sewers, sanitary sewers, roadway improvements, utilities, special allowances for fees, assessment fees, municipal fees, planning and engineering.

Mr. Donald Roach, the Commission's appraiser, offered similar testimony. He agreed with the Bartons that the property's location suggested a commercial use and estimated it was worth $5,153,167 as commercial ground. However, because of the property's topography and the anticipated development costs, Mr. Roach opined the property would only bring $10,000 to $15,000 an acre as

commercial ground. As residential property, he estimated the property was worth $22,500 an acre, with the exception of the floodplain ground. The floodplain ground was worth approximately $10,000 an acre.

■ In the Bartons' first point on appeal, they contend the trial court improperly overruled their objection to a misstatement of law made by the Commission's counsel. In the course of his closing argument, counsel for the Commission said "[t]he State of Missouri has a duty to pay for the fair market value of the land that was acquired on the Barton property." The Bartons objected to the statement on the ground it was a misstatement of the proper legal standard for measuring damages in a condemnation case. The court overruled the objection. However, the Commission's counsel, in continuing the argument after the ruling, accepted the Bartons' view and said: "Back up. We have a duty to pay the difference between the fair market value of the property immediately before and immediately after and we don't have to pay a penny more or a penny less. We've gotta pay what you determine is the appropriate amount."

■ The trial court is required to prohibit or promptly correct misstatements of the law which occur during closing argument. *Fox v. Ferguson,* 765 S.W.2d 689, 691 (Mo. App.E.D.1989). Where a misstatement is contrary to the law as submitted in the court's instructions, and the court permits the misstatement by overruling an objection to it, "reversible error is almost inevitable." *Halford v. Yandell,* 558 S.W.2d 400, 412 (Mo. App.S.D.1977).

Although we acknowledge counsel misstated the law during closing argument, we cannot find the misstatement resulted in prejudice. Counsel for the Commission immediately corrected the misstatement and a close examination of the record reveals the correct measure of damages was presented to the jury sixteen times during the course of the trial. The jury instructions, containing the correct standard, were also made available to the jury throughout deliberations. We further note the Bartons' counsel did not request a mistrial. By the Bartons' failure to request a mistrial at the time of the impropriety, they implicitly decided the argument complained of was not so grievous as to require drastic action. *Welch v. Burlington Northern Railroad Company,* 807 S.W.2d 226, 228 (Mo.App.E.D.1991). Accordingly, under these particular circumstances, we find this case represents an exception allowed by the language "reversible error is *almost* inevitable." Point denied.

■ The three remaining claims of trial court error involve arguments the trial court erred in admitting or excluding evidence. The admission or exclusion of evidence in a condemnation proceeding is soundly vested within the discretion of the trial court. *State ex rel. Missouri Hwy. & Transp. Com'n v. Gannon,* 898 S.W.2d 141, 143 (Mo.App.E.D. 1995). Errors in such a determination by the trial court will not result in reversal unless there is a substantial and glaring injustice. *Id.*

■ The Bartons argue the trial court erred in excluding evidence from their expert regarding his reference to an income approach in valuing the property. Such evidence may not be received in a partial taking as proof of damages and an expert should not be allowed to testify that method was utilized by him, along with a proper method, in determining the pre-taking value of the property. *State ex rel. Missouri Hwy. & Transp. Com'n v. Wallach,* 845 S.W.2d 703, 706 (Mo. App.E.D.1993). Point denied.

■ The Bartons next argue the trial court erred in admitting into evidence a twenty year old market study. Because the only issue in a condemnation case is damages, the admissibility of evidence depends on whether it tends to aid the jury in determining value and thus resolving the issue of damages. *State ex rel. County of St. Charles v. Latham,* 868 S.W.2d 177, 181 (Mo.App. E.D.1994). Therefore, all evidence of value which an ordinarily prudent person would

consider in reaching a conclusion regarding the fair market value of the condemned property is admissible. *Id.*

At trial, Mr. Barton testified he successfully applied with the St. Louis County Planning and Zoning Commission in 1974 to have his property rezoned from single-family residential to multi-family residential. Mr. Barton further testified he did not develop the property because of difficulty financing the project and not because of "development problems" with the property. During cross-examination, Mr. Barton said he retained the services of a marketing analysis firm to assist him in the rezoning application. The Commission introduced into evidence the Bartons' 1974 zoning application. The application contained a market study from the marketing analysis firm the Bartons retained to assist them in their zoning application. The Bartons objected to the introduction of the market study, arguing the market study was "too remote in time as to have any relevance." The trial court overruled the objection and admitted the market study into evidence. The following exchange then took place:

Q: (reading from the market study) 'The physical features of the site rule out several uses due to the topography. Commercial and industrial uses can be excluded because of the slope. However, residential uses could be accommodated.'

A: It says further here, 'The most feasible use of the land recognized the topography is the residential.' But times have changed and that is no longer the case. That report is 20 years old.

Q: You haven't done anything to change the topography of your site since this application was made, have you, sir?

A: There are changes in topography for most of the developments in that area.

Q: That wasn't my question, Mr. Barton. I said you haven't done anything to change.

A: No, I haven't done any grading on that property, no.

■ The Bartons argue that although "[t]he marketing study certainly would have been relevant in determining the highest and best use of the land in the early 1970s ... it is too remote to have any bearing on the highest and best use of the land on [the date of the taking]." We disagree. Mr. Barton testified the topography of the property had not changed since the market study was performed. The jury was also clearly informed the market study was twenty years old. The passage of time alone is not sufficient to support an objection of remoteness. *Mid–American Lines, Inc. v. Littrell,* 653 S.W.2d 391, 393 (Mo.App.W.D.1983). The remoteness of the market study should go to the weight given the evidence rather than its admissibility. *Id.*

■ We also note, during direct examination Mr. Barton offered testimony regarding the 1974 zoning application and indicated there were no "development problems" with the property. Having opened the subject of the zoning application and the property's ability to be developed, the Bartons may not complain of the Commission's efforts to rebut the evidence. *State ex rel. State Hwy. Com'n v. Klipsch,* 392 S.W.2d 287, 292 (Mo. 1965). Point denied.

■ Finally, the Bartons argue the trial court erred in excluding the deposition testimony of Kia Ashrafzadeh, a District Highway Design Engineer for the Missouri Highway and Transportation Department. The issue arose in the following manner. During direct examination, Mr. Borgard testified that although the lower, front two acres of the property could be commercially developed, it was not feasible to develop the property located in the flood way because, in part, there was insufficient space to carry out reclamation.[1] Mr. Borgard further testified, however, the Commission planned to and could build in the flood way because the Commis-

---

1. During direct examination, Mr. Borgard described reclamation as "[f]or every cubic yard of fill you place in the flood hazard area you have to remove an equal amount."

sion is "not obligated to follow the same regulations and reclamation as a developer...." In order to impeach this testimony, the Bartons sought to introduce a portion of Mr. Ashrafzadeh's deposition testimony in which he stated the Commission and private developers must meet the same regulations when building in a flood way. The Commission objected to the introduction of the deposition on the ground the Bartons had not shown Mr. Ashrafzadeh was unavailable to testify. The objection was sustained. The Bartons argue they should have been allowed to introduce the deposition into evidence because Mr. Ashrafzadeh was a managing agent of the Commission and, consequently, his testimony constituted an admission against interest.

 The use of depositions at trial is authorized by Rule 57.07(a). A distinction is made between the deposition of a party to the litigation and the deposition of a non-party witness. In the case of a party, or of anyone who at the time of the taking of the deposition was an officer, director; or managing agent, or a person designated under Rule 57.03(b)(4) or 57.04(a) to testify on behalf of a governmental agency which is a party, his deposition may be used by an adverse party for any purpose. Rule 57.07(a)(2). The availability of a witness is not a factor when considering the admissibility of an admission by a party-opponent. *United Services of America v. Empire Bank,* 726 S.W.2d 439, 444 (Mo.App.S.D.1987).

Here, there was no showing Mr. Ashrafzadeh was an "officer, director, or managing agent" of the Commission. Although Mr. Ashrafzadeh held an engineering position with the Missouri Highway and Transportation Department, the Bartons failed to establish he had a supervisory position with the Missouri Highway and Transportation **Commission,** a separate entity created by stat-

ute. We further note Mr. Ashrafzadeh was not deposed as a designated representative of the Commission pursuant to Rule 57.03(b)(4).[2] The Bartons therefore failed to establish Mr. Ashrafzadeh was qualified to make admissions binding on the Commission. §§ 226.010 to 226.190 RSMo 1994; *see also Gordon v. St. Mary's Hospital,* 769 S.W.2d 151, 156 (Mo.App.W.D.1989). Point denied.

The judgment of the trial court is affirmed. Commission's motion to strike Bartons' reply brief is denied.

CRANE, C.J., and GEORGE M. FLANIGAN, Senior Judge, concur.

---

**2.** Rule 57.03(b)(4) states a party:
   ... may in the notice and in a subpoena name as the deponent a ... governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf and may set forth, for each person designated, the matters on which the person will testify.