**STATE of Missouri, ex rel. MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Respondent,**

v.

**Cleo SISK, et al. (Exceptions of Danny and Lilly Mann), Appellant.**

**No. WD 52268.**

Missouri Court of Appeals, Western District.

Sept. 9, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 28, 1997.

Application to Transfer Denied Nov. 25, 1997.

William David Farrar, Kansas City, for Respondent.

Joseph R. Borich, III, Leawood, KS, for Appellant.

Before LOWENSTEIN, P.J., and SPINDEN and HOWARD, JJ.

HOWARD, Judge.

Danny and Lilly Mann appeal from a judgment awarding them $85,000.00 in damages for property acquired through condemnation by the Missouri Highway and Transportation Commission ("the MHTC"). The Manns contend that the trial court erred by failing to strike a venireperson for cause, by striking their appraiser's testimony regarding comparable sales of other properties, by allowing the MHTC to cross-examine Mr. Mann about his prior statements at a commissioners' hearing, and by sustaining pretrial motions in limine filed by the MHTC.

This case began when the MHTC filed a petition to condemn approximately 4.5 of the Manns' 70.42 acres of farm property in Sugar Creek, Missouri. Court-appointed commissioners filed a report awarding the Manns $106,000.00 for the acquired property, and the Manns filed exceptions to the report, asking that their damages be appraised by a jury.

During voir dire proceedings at the ensuing trial, the Manns' attorney questioned venirewoman Christina Zimmerman—who worked for an insurance company supervising people who valued insurance claims—about whether her work experience would affect her ability to be fair and impartial in this case:

Q. Okay. And the fact that there's going to be certain claims like that, and the fact that, you know, the Manns are going to be asking for money for the loss of, you know, or the effect for the loss of some of their improvements and how the acquisition affects their improvements, and the fact that you're in the business of adjusting and they're asking for money, and at Farmer's you're attempting to evaluate if you should give as much money say as a claimant is asking, would that affect your ability to give a fair and impartial verdict for the Manns?

A. No, because I don't handle very many, very little, if at all, homeowner's type of property claims.

Q. Okay. But I've taken it one step beyond that. Even though it's not the exact same thing it's procedurally the same process of asking for money and you maybe determining that—

A. A value.

Q. Exactly. Would the fact that you work for an insurance company and you might, you know, valuate things, certainly affect your ability here to give a fair and impartial verdict?

A. I don't know how to answer that. I think it would probably, because I have knowledge in how to value claims, give a more accurate verdict. I don't know.

Q. So you would bring that knowledge and maybe use what you have in your experience as an adjuster to value this claim and—

A. Right.

Q. —thank you. So, do you think you could be fair with that knowledge?

A. Yes.

At the close of the voir dire proceedings, the trial court denied the Manns' motion to strike venirewoman Zimmerman for cause, and she was removed from the panel by a peremptory strike.

The first witness to testify on behalf of the Manns was Merle Decker, a real estate appraiser. Mr. Decker stated that he "found enough like properties" to conclude that the

pre-acquisition value of the Manns' property was $20,500.00 per acre. He further testified that, prior to the acquisition, the total value of the property was $1,585,000.00, and after the acquisition, the total value of the property was $906,310.00.

After Mr. Decker expressed his opinion that the property was worth $20,500.00 per acre before the acquisition, the Manns' attorney asked him to describe the comparable sales upon which that figure was based. Mr. Decker first described a 1993 transaction in which Citywide Asphalt sold 328 acres to Waste Management of Missouri for $22,868.00 per acre. The trial court then permitted the MHTC's counsel to conduct a voir dire examination of Mr. Decker concerning that sale. In response to questions from the MHTC's counsel, Mr. Decker explained that he verified the terms of the Citywide Asphalt sale with another appraiser:

Q. Now, you announced to ... the jury a few minutes ago that you had verified this sale?

A. Yes.

Q. Okay. And what person was it that you verified the sale with?

A. Tom Ruhl. Tom Ruhl was the appraiser and he took care of both of these, both sides, and I verified with Tom Ruhl. And I know Tom Ruhl, Tom is a personal friend.

The MHTC's counsel then moved to strike Mr. Decker's testimony about the Citywide Asphalt sale on the ground that Mr. Decker failed to adequately verify the terms of the transaction:

Now, the ... foremost argument that I have that this sale should not be allowed is that to get the sale done you have to verify it through the buyer—he said Tom Ruhl was not the buyer, the seller, Tom Ruhl was not the seller, or the broker. He said Tom Ruhl was not the broker, that there was no broker. Therefore, he got this information from the form that he has that was from Tom Ruhl, simply another appraiser. Another appraiser that verifies a sale does not give credibility to him coming in and by hearsay testifying to what another appraiser told him. And the case law in Missouri does not allow as an exception to hearsay unless the expert witness verifies

it was from the buyer, the seller or the broker. He has failed to do that on this sale.

THE COURT: The evidence was he contacted Mr. Ruhl that he knew personally and confirmed the sale price. As an expert, isn't he allowed to rely upon hearsay where it's not [inaudible].

MHTC COUNSEL: But according to case law that just doesn't happen. This is a matter that I've had great success in the past, there are appellate courts here that upheld the fact that unless you get it from the buyer, the seller or the broker, it is not a verified sale. If that's the case that even if you get it from a partner in your appraisal firm that is double hearsay.

THE COURT: Response?

MANN COUNSEL: That's sufficient under Missouri law. There's no question he just verifies Ruhl's opinion.

THE COURT: Simply asking Ruhl—

MANN COUNSEL: Sure. He was the one that did the appraisal, there was no broker on it so he was the closest in time to it. I mean, if they have any information it's not a valid sale I'm sure we're hear later on.

MHTC COUNSEL: Your honor, my expert witness tried to verify this sale. Those terms are confidential, there's no way Mr. Decker got it.

THE COURT: I'll tell you what. You're probably right and I'll sustain the objection. Now, if he can establish somebody he confirmed these figures I'll let it in though at this point I will sustain the objection and I will strike his testimony at this point.

The trial court then ordered the testimony about the Citywide Asphalt sale stricken, telling the jury that "I am striking from the record this witness testimony concerning statements made to this witness by Mr. Tom Ruhl." The Manns' attorney returned to his examination of Mr. Decker, and the following exchange occurred:

Q. Did you verify this any other way?

A. If I had known that this crisis was coming up here in this courtroom, sir, I

could have, very easy. I could've called Waste Management, or went to their office, got the other side of it. And I could've asked Tom Ruhl if he did any of the appraisal work, and he probably did. I imagine that's how—

MANN COUNSEL: Your Honor, we ask time to recess tonight and in the interest of justice I'll have Mr. Decker go ahead and—

THE COURT: You can recall this witness later if you'd like, on this limited issue.

MANN COUNSEL: Okay. We'll come back.

Q. Will you, after you're done tonight and will you go and verify this with the buyer and seller as to the amounts—

A. Yes.

When the trial reconvened the following day, Mr. Decker testified that he spoke with Russell Buhler, the seller of the property, and that Mr. Buhler would not confirm or deny the terms of the sale. Later, the following exchange occurred:

MHTC COUNSEL: Judge, the problem I have is, again, as an officer of the court, I spoke last evening with Russell Buhler on his car phone, and then for an extended time on his home phone, and I asked him whether or not there were any confidentiality clauses in the sale from Citywide, which he is, to Waste Management. He said absolutely. I asked him whether or not in the past he had ever spoken with anyone by the name of Merle Decker. He said no, I've never heard of him. I said at any time did you talk to a man named Tom Ruhl; he said I've never heard of him. And I said all right, then I'm going to ask you, as if I am any appraiser, if I would ask you tonight whether you would divulge the terms of that sale would you do so. He said absolutely not.

THE COURT: So he wouldn't confirm, wouldn't deny—

MHTC COUNSEL: Wouldn't confirm or deny.

THE COURT: I don't call that a verification—

MANN COUNSEL: Well—

THE COURT:—from an appropriate source.

MANN COUNSEL: And I believe Merle, that he talked to him after Bill talked to him because Merle, you know, called me about eleven p.m. last night and related the conversation that he in essence said today. He went over each of the elements of the sale, you know, with him, and there was no denial of it. I mean—

THE COURT: Of course there wouldn't be because it's confidential.

MANN COUNSEL: Yeah, but—

THE COURT: So he can't affirm it, can't deny it—

MANN COUNSEL: Well, those numbers didn't come from nowhere.

THE COURT: No, they came from Ruhl, but we can't consider it. We know where he got the figures, but he couldn't confirm them with the seller, buyer, or broker.

MANN COUNSEL: He confirmed that he, you know, I feel that's more than enough for confirmation purposes.

THE COURT: The fact it was not denied?

MANN COUNSEL: Correct. And the fact that he went over each and every element of it and the seller, who there's no question Merle was in communication with, Mr. Decker said I went over each and every element and it was not denied and the man, Merle's testimony was that the numbers speak for themselves, or the documents speak for themselves. That's what Merle said on the witness stand.

THE COURT: Okay. Your request to reopen this issue is denied.

The trial court also denied a motion by the MHTC to exclude the entirety of Mr. Decker's testimony.

Later, Mr. Decker described a 1975 transaction in which Pauline Anderton sold 39.4 acres to Polar International for $14,000.00 an acre. The MHTC objected to Mr. Decker's testimony about the Anderton sale on the ground that it was too remote in time, and the trial court ordered the testimony about the Anderton sale stricken. Mr. Decker de-

scribed three additional comparable sales in support of his appraised value of the Mann property. These included a 1994 transaction in which B.J. Dominique sold four acres to Gulley Transportation for $34,848.00 an acre, a 1986 sale of 362.55 acres to Santa Fe Partnership for $20,000.00 per acre, and a sale of 2.2 acres to the Hunt Midwest Industrial Park for $1.25 per square foot. Mr. Decker's testimony regarding these three comparable sales remained in the record.

Another appraiser, Robert L. Newsome, also testified on behalf of the Manns. Mr. Newsome stated that, prior to the acquisition, the Manns' property was worth $20,000.00 an acre, and had a total value of $1,523,000.00. Mr. Newsome further testified that, after the acquisition, the Manns' property was worth $15,000.00 an acre for a total value of $949,300.00.

A third appraiser, David Miller, testified on behalf of the MHTC. Mr. Miller stated that, prior to the acquisition, the Manns' property was worth $5,263.00 per acre, and had a total value of $392,350.00. After the acquisition, according to Mr. Miller, the Manns' property still had a value of $5,263.00 per acre. However, Mr. Miller testified, because of losses related to a gravel road, a company easement, a produce stand, septic tanks, and the loss of the 4.36 acres being condemned, Mr. Miller calculated the Manns' total damages at $66,688.00. At the close of trial, the jury awarded the Manns $85,000.00 in damages.

■ In their first point on appeal, the Manns claim that the trial court erred by denying their motion to strike venirewoman Zimmerman for cause. The Manns contend that, because venirewoman Zimmerman believed she had more accurate knowledge of how to value a claim for damages, she could not be a fair and impartial juror in this case. The gist of the Manns' complaint is that they were forced to use one of their peremptory strikes to remove Ms. Zimmerman from the panel.

This point is devoid of merit. In *Rodgers v. Jackson County Orthopedics, Inc.*, 904 S.W.2d 385, 391 (Mo.App. W.D.1995), this court held that a litigant does not have a right to a new trial on the ground that the trial court erroneously required him to use a peremptory challenge to remove a juror who should have been removed for cause, so long as the jurors who, in fact, sat on the jury were qualified. The Manns make no claim that any of the sitting jurors were unqualified. Point denied.

In their second point on appeal, the Manns claim that the trial court erred in striking Mr. Decker's testimony concerning the City-wide Asphalt sale. The Manns contend that Mr. Decker had properly verified the terms of the transaction, and therefore the evidence of that comparable sale should have been admissible.

The MHTC contends that, in order to testify about a comparable sale which was used in calculating a value for the condemned property, an appraiser acting as an expert witness in a condemnation case must have verified that sale with either the buyer, seller, or broker involved in the transaction. The MHTC argues that Mr. Decker's attempts to verify the sale through another appraiser, Mr. Ruhl, was insufficient because it did not meet this requirement.

■ An expert testifying on the value of property in a condemnation proceeding may base his opinions in part upon inquiries concerning other sales, even though such sources constitute hearsay and would ordinarily be inadmissible. *State v. Barron*, 400 S.W.2d 33, 37–38 (Mo.1966). In such cases, the details of the sales are not offered or admitted as independent, substantive evidence of the value of the subject property, but are used instead as support and background for the expert's own opinion as to the value of the subject property, and the hearsay rules should not be applied to prevent an expert witness from giving the basis of his opinion. *Id.* at 38. However, an expert testifying in a condemnation suit should make careful inquiry into the facts concerning similar sales upon which he bases his opinion as to land values. *Id.* at 37.

■ Missouri case law offers little guidance as to the kind of inquiry which would satisfy this rule. *State, etc. v. Berkeley School Dist.*, 618 S.W.2d 195, 196–197 (Mo.

App. E.D.1981) holds that it is insufficient for an appraiser to merely rely upon some unknown person in his office to confirm the data. *State ex rel. State Hwy. Com'n v. Jasper,* 544 S.W.2d 554, 555 (Mo. banc 1976) appears to hold that an appraiser who verifies comparable sales with either the seller, buyer, or broker involved in the transaction has made sufficient inquiry for the appraiser to testify about the sale as a basis for his valuation of the subject property. However, *Jasper* does not hold that the broker, seller, or buyer are the only sources from which an expert witness can verify the terms of a comparable sale in order to discuss it at trial.

■ Surprisingly, neither party on appeal discusses the relationship between these cases and § 490.065 RSMo 1994, which as this court observed in *Ryan v. Parker,* 812 S.W.2d 190, 194 (Mo.App. W.D.1991), now governs the admissibility of expert testimony. Section 490.065.3, which has been applied to expert testimony in condemnation cases (*see State ex rel. MHTC v. Matula,* 910 S.W.2d 355, 358–359 (Mo.App. E.D.1995)), provides that facts or data upon which an expert bases an opinion may be based upon hearsay sources, but such facts or data "must be of a type reasonably relied upon by experts in the field in forming opinions or inferences upon the subject and must be otherwise reasonably reliable."

■ Section 490.065.3 would require that, in order for Mr. Decker's testimony regarding Mr. Ruhl to be admissible, the data from Mr. Ruhl, another appraiser, would have to be the kind of source reasonably relied upon by experts in the field, and such data would have to be otherwise reasonably reliable. It would appear from the record that the Manns failed to make such a showing in the case at bar.

■ A trial court does not usually commit reversible error by mere exclusion of expert testimony, even if the offered testimony was relevant and admissible. *Bruflat v. Mister Guy, Inc.,* 933 S.W.2d 829, 833 (Mo. App. W.D.1996). In condemnation cases, errors in the admission or exclusion of evidence will not result in the reversal of verdicts unless there is substantial and glaring injus-

tice. *State ex rel. State Highway Com'n v. Texaco, Inc.,* 502 S.W.2d 284, 289 (Mo.1973); *LCRA v. Kansas Univ. & Endowment Ass'n,* 797 S.W.2d 495, 498 (Mo.App. W.D.1990). Given the totality of questions surrounding the reliability of Mr. Ruhl's information about the Citywide Asphalt sale and the reasonableness of Mr. Decker's reliance upon that information, it was not a substantial and glaring injustice for the trial court to exclude it, even if the MHTC mischaracterized the law by claiming that Missouri appellate decisions have held that the broker, seller, or buyer are the only sources from which an expert witness can verify the terms of a comparable sale. If a trial court's decision to exclude evidence is correct for any reason, it will be affirmed on appeal. *Destin v. Sears, Roebuck and Co.,* 803 S.W.2d 113, 117 (Mo. App. W.D.1990). Furthermore, the exclusion of Mr. Decker's testimony concerning the Citywide Asphalt sale did not create a substantial and glaring injustice because the basis of his opinion of value was established by other evidence. *See State Transp. Com'n v. Buys,* 909 S.W.2d 735, 739 (Mo.App. W.D. 1995). Point denied.

In their third point on appeal, the Manns claim that the trial court erred in striking Mr. Decker's testimony concerning the Anderton sale. The Manns contend that the jury should have been allowed to consider the testimony despite the sale's remoteness in time.

■ Evidence of the sale price of property which is sold reasonably near the time of the taking is admissible to aid the triers of fact in determining the compensation to which the owner is entitled for the taking of his property, and the trial court has considerable discretion in determining whether this test of admissibility is met. *In re Armory Site in Kansas City,* 282 S.W.2d 464, 473 (Mo.1955). The Manns have not made a persuasive argument that the trial court abused its discretion in excluding evidence of the Anderton sale, which occurred twenty years prior to the taking in the case at bar. The Missouri Supreme Court has upheld the exclusion of evidence of a sale similarly remote in time (23 years). *Shelby County R–*

*IV School District v. Herman,* 392 S.W.2d 609, 614 (Mo.1965). Point denied.

In their fourth point on appeal, the Manns claim that the trial court erred by allowing the MHTC to question Mr. Mann about his testimony at a prior condemnation hearing, where he stated that the amount of damages attributable to the condemnation was $193,275.00. This prior statement was inconsistent with his trial testimony that the damages totalled $738,000.00. The Manns contend that testimony from a condemnation commissioners' hearing is inadmissible in an ensuing jury trial.

In support of their contention, the Manns cite *State v. Latham,* 868 S.W.2d 177 (Mo. App. E.D.1994), which merely indicates that evidence of the commissioner's award itself may be objectionable. The fact is that a landowner's prior estimate of damages presented to the commissioners is admissible to show its inconsistency with his testimony at trial, so long as there is no mention or reference to the commissioners' hearing, and so long as the amount of the commissioners' award is not revealed. *State ex rel. City of Warrensburg v. Stroh,* 690 S.W.2d 215, 216–217 (Mo.App. W.D.1985). Those safeguards were observed in the case at bar. Point denied.

In their fifth point on appeal, the Manns claim that the trial court erred by sustaining various motions in limine filed by the MHTC. Of course, a ruling on a motion in limine is interlocutory and hence its denial cannot constitute reversible error. *Ball v. American Greetings Corp.,* 752 S.W.2d 814, 824 (Mo.App. W.D.1988). Furthermore, in their ensuing argument, the Manns make no serious effort to explain on what specific legal grounds the excluded evidence was admissible. Point denied.

The judgment of the trial court is affirmed.

All concur.