

# Missouri Court of Appeals

## Southern District

### Division Two

STATE ex rel. MISSOURI HIGHWAYS )
AND TRANSPORTATION COMMISSION, )
      )
    Relator/Appellant, )    No. SD33804
      )    Filed:  January 27, 2016
    vs. )
      )
JOSEPH H. BOER, et al., )
(Exceptions of Defendants Joseph H. Boer, )
Mary Christine Boer and Joseph Boer's Food )
Service d/b/a The Potted Steer Restaurant) )
(Parcel 2), )
      )
    Defendants/Respondents. )

### APPEAL FROM THE CIRCUIT COURT OF LACLEDE COUNTY

Honorable Kenneth Hayden, Circuit Judge

**AFFIRMED**

This is a condemnation action involving the partial taking of approximately 1.74 acres of a 2.3-acre tract for a highway easement from property known as "The Potted Steer Restaurant (Parcel 2)" (the "Potted Steer"), owned by Joseph H. Boer, Mary Christine Boer, and Joseph Boer's Food Service d/b/a The Potted Steer Restaurant (collectively the "Boers"), located in Camden County, Missouri.  The trial court entered judgment following a jury verdict of

$2,900,000 for damages, less adjustments for interest and previous payments  Missouri Highways and Transportation Commission ("MHTC") appeals this judgment, raising three points of alleged error.  Finding no merit in MHTC's points, we affirm the trial court's judgment.

## Facts and Procedural History

MHTC filed a petition to condemn approximately 1.74 of the 2.3 acres of the Potted Steer owned by the Boers in Camden County, Missouri, leaving only .566 acres.  Commissioners filed a report awarding the Boers $2,500,000 for the acquired property, and the Boers filed exceptions to the report asking that their damages be determined by a jury.

On December 15, 2014, a three-day jury trial commenced.  Joseph H. Boer ("Mr. Boer") testified he moved to Camden County, Missouri, in 1962 and had owned commercial real estate there since 1973, when he opened the Potted Steer.

Mr. Boer described the Potted Steer as a "high end, expensive, protein venue restaurant" patronized by "mostly professional people."  Located on Highway 54, it sloped down to the lakefront which offered Mr. Boer's patrons an unobstructed view of the lake and a dock allowing access to the Potted Steer by water.  Because the Potted Steer had highway frontage, lake frontage, and was located next to the Grand Glaize Bridge ("the Bridge"), it meant the Potted Steer had exposure from persons driving over the bridge, as well as persons driving under the bridge from the water.  Mr. Boer testified that these features of his property were, "[c]ertainly, absolutely, positively" important.  He testified that the attributes of having highway and lake frontage, and being located at one end of the bridge, made his property "unique"[1] among other lake area properties.  The Potted Steer was located at one of the four corners of the Bridge.  Link's Landing, another commercial property, was located diagonally from the Potted Steer at

---

[1] The parties, and their respective expert witnesses, were in agreement that the Potted Steer was "unique" due to its location, and highway and lake frontage.

the opposite end of the Bridge.  Only one other corner of the Bridge had developed property with direct roadway access.

Mr. Boer also testified about the manner in which the condemnation affected the use and value of what remained after the partial taking of the Potted Steer.  The parking, lakefront, all highway frontage, and sewer service were lost.  Mr. Boer viewed what was left as "a bunch of old lumber."  This was consistent with the opinion of MHTC's witness, David Nunn ("Nunn"), who opined that because of the loss of parking in relation to the size of the restaurant "it would be difficult to utilize the building in any really functional manner, and . . . the building had no value and would need to be razed or torn down."

Mr. Boer explained that he had taken a course on real estate at the University of Missouri, in addition to his experience with real estate.

Mr. Boer testified that he had personal knowledge of real estate values in Camden County.  He noted that he had owned and leased several parcels of real estate in the area over the years.  He also engaged in regular conversations with fellow business people and restaurant patrons regarding property sales in the area.  In particular, Jim Muff ("Muff"), the owner of Link's Landing, told Mr. Boer that MHTC had purchased his property in 1992.

MHTC's counsel objected to any testimony by Mr. Boer using comparable sales data to support his opinions of value because there was an insufficient foundation qualifying him as an expert.  MHTC's counsel also specifically objected to the admission into evidence of the Link's Landing sale because the sale was too remote in time to be admissible as a comparable sale.  The trial court overruled MHTC's objections.[2]

---

[2] The trial court also considered these objections during pre-trial motions in limine filed by MHTC, and during a pre-trial conference.  MHTC preserved its objections during Mr. Boer's testimony.  The trial court also heard argument at that point and invited further case law for review before overruling the objections.

Mr. Boer continued his testimony explaining that he learned from Muff that MHTC had bought the Link's Landing property for $2,900,000. That sale was one factor in Mr. Boer's opinion of the pre-condemnation value of his property. Mr. Boer considered the Link's Landing property to be similar to his property because it also had highway and lake frontage, but it did not include as much acreage as the Potted Steer. Mr. Boer considered the Potted Steer superior to the Link's Landing property.

Mr. Boer was aware that in 2008, the Bank of the Lake of the Ozarks purchased a piece of real estate located on Highway 54, less than a mile from the Potted Steer (the "BOLO sale"). He learned of the BOLO sale directly from bank executives and that the sale price was more than one million dollars. Mr. Boer noted that the BOLO sale property was one-third the size of the Potted Steer.

Given his consideration of these sales, what he learned from talking to his patrons, and his own experience purchasing property in the area, Mr. Boer's opinion was that the pre-condemnation value of the Potted Steer was $3,500,000. Mr. Boer testified he thought the remaining .566 acres was worth $200,000. Mr. Boer asked the jury to award him the difference of $3,300,000.

John Kirby ("Kirby"), Mr. Boer's expert real estate appraiser, opined that just compensation for the Potted Steer was $2,085,000. MHTC's expert real estate appraisers, Allan Moore ("Moore") and Nunn, opined that just compensation was $1,200,000 and $1,500,000, respectively. In forming their opinions, each expert relied on sales of property they believed to be somewhat comparable to the Potted Steer.

Ultimately, the jury awarded the Boers $2,900,000 in damages for the Potted Steer. The trial court entered judgment consistent with the verdict and denied MHTC's "Motion for New

4

Trial or, in the Alternative, for Remittur."  Additional facts necessary to the disposition of the case are included as we address MHTC's three points on appeal.

In those points, MHTC contends:  (1) the trial court erred in allowing Mr. Boer to base an opinion on comparable sales because he did not qualify as an expert; (2) the trial court erred in allowing Mr. Boer to base an opinion on the amount of the Link's Landing sale because that sale was too remote in time; and (3) the trial court erred in allowing the Boers' counsel to reference the Boers' "business loss" during closing argument.

In light of our standard of review, *infra*, the issues for our determination are whether any of the aforementioned actions by the trial court amounted to an abuse of discretion.

### Standard of Review

We review the admission or exclusion of expert evidence for manifest abuse of discretion.  *Twin Chimneys Homeowners Ass'n v. J.E. Jones Const*. *Co.*, 168 S.W.3d 488, 504 (Mo.App. E.D. 2005).  Additionally, the trial court has broad discretion in the control of closing arguments, review of which is for abuse of discretion.  *Warren Davis Properties V, L.L.C. v. United Fire & Casualty Co.*, 111 S.W.3d 515, 527 (Mo.App. S.D. 2003).

Appellant bears the burden of rebutting the presumption that the trial court ruled correctly, proving that the trial court abused its discretion and showing that he or she has suffered prejudice from the abuse.  *Twin Chimneys Homeowners Ass'n*, 168 S.W.3d at 504.  A trial court ruling is an abuse of discretion when it "is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration."  *Lozano v. BNSF Ry. Co.*, 421 S.W.3d 448, 451 (Mo. banc 2014) (internal quotation and citation omitted).  "There is no

5

abuse of discretion if reasonable minds could disagree about the propriety of the trial court's decision." *Lewey v. Farmer*, 362 S.W.3d 429, 435 (Mo.App. S.D. 2012).

## Point I – No Abuse of Discretion in Allowing Mr. Boer's Testimony of Other Sales

All parties recognize and acknowledge that "[w]hile property owners may always testify as to their opinion concerning the value of their own property, they may not support that opinion by reference to comparable sales unless they qualify as an expert." *State ex rel. Missouri Highway & Transp. Comm'n v. McDonald's Corp.*, 872 S.W.2d 108, 113 (Mo.App. E.D. 1994); *see also State ex rel. Missouri Highway & Transp. Comm'n v. Pracht*, 801 S.W.2d 90, 93-94 (Mo.App. E.D. 1990). Mr. Boer concedes that his testimony regarding the value of the Potted Steer was supported in part by comparable sales testimony; i.e., references to the Link's Landing sale and the BOLO sale. Nevertheless, Mr. Boer urges, and MHTC disputes, that all such testimony was admissible because he qualified as an expert under section 490.065.[3]

Section 490.065 controls the admission and exclusion of expert testimony in Missouri civil cases. *Kivland v. Columbia Orthopaedic Grp., LLP*, 331 S.W.3d 299, 310 (Mo. banc 2011). "Generally, expert testimony is admissible as long as the expert's competence on the subject matter is superior to that of the ordinary juror and the expert's opinion aids the jury in deciding an issue in the case." *Freight House Lofts Condo Ass'n v. VSI Meter Services, Inc.*, 402 S.W.3d 586, 596 (Mo.App. W.D. 2013); *accord State ex rel. State Highway Commission v.*

---

[3] Section 490.065.1 provides, in pertinent part:

> In any civil action, if scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

All statutory references are to RSMo 2000, unless otherwise indicated.

6

*Heim*, 483 S.W.2d 410, 413-14 (Mo.App. Spfld.D. 1972). With particular regard to matters of real estate value in condemnation proceedings, *Heim* is instructive:

> No exact formula exists for judging the competency of a witness to give an opinion on real estate values. To qualify as such an expert, it is not necessary that the witness be engaged in the real estate business. If the witness is capable of forming a better opinion on values than the jury or men in general because he is acquainted with the land in question, professes to know its value, has knowledge of and opportunity to learn the worth of similar property in the vicinity, and has participated in or has information concerning the sale of like real estate, he is usually considered competent to state an opinion.

*Heim*, 483 S.W.2d at 413-14; *see also* **State ex rel. State Highway Commission v. Bloomfield Tractor Sales, Inc.**, 381 S.W.2d 20, 24 (Mo.App. Spfld.D. 1964) ("One need not be an 'expert,' in the sense that word is ordinarily used, to testify as to the value of land.").[4]

In challenging Mr. Boer's competence to testify about comparable sales, MHTC argues that Mr. Boer did not have "sufficient knowledge of real estate values in the applicable market as shown by his lack of any appraisal training or certification, or any training or certification as a real estate professional such as a broker or salesperson, and by his own admission." This argument necessarily fails as it overlooks other evidence that supports the trial court's ruling.

The record reflects that Mr. Boer had some specialized knowledge by living in, and purchasing and leasing various commercial properties in Camden County for several decades since he first arrived in the 1960s. He indicated that he had acquired a general familiarity with property sales in the surrounding area through discussions with business acquaintances and restaurant patrons. He further expressed his specific familiarity with both the Link's Landing and BOLO sales, including property details and the amounts for which they sold.

---

[4] Although *Heim* and *Bloomfield* were decided before the enactment of section 490.065 in 1989, we find the pronouncements of law therein consistent with the statute's requirement that an expert be qualified "by knowledge, skill, experience, training, or education[.]" *Cf.* **Missouri Pipeline Co. v. Wilmes**, 898 S.W.2d 682 (Mo.App. E.D. 1995) (relying on *Bloomfield* for standard to measure "expert" qualifications for purposes of land valuation).

We cannot say from this record that reasonable minds could not disagree about the propriety of the trial court's decision to allow Mr. Boer to testify as to comparable sales. As such, we find no abuse of discretion. *Cf.* **Heim**, 483 S.W.2d at 413-14 (finding no abuse of discretion in allowing witness to testify about value of farm where witness had lived in the area for over forty years, "heard of the sales of various farms," bought and sold land, and was familiar with the piece of real estate at issue). MHTC's challenges instead go to the weight of Mr. Boer's testimony and not its admissibility. *See* **Bynote v. National Super Markets, Inc.**, 891 S.W.2d 117, 126 (Mo. banc 1995). The ruling was not against the logic of the circumstances, nor unreasonable and arbitrary. There was no abuse of discretion in allowing Mr. Boer to testify about comparable real estate sales of which he had knowledge. Point I is denied.

### Point II – No Abuse of Discretion in Allowing Testimony Regarding the Link's Landing Sale

Alternatively, MHTC contends that even if Mr. Boer qualified as an expert, his testimony regarding the Link's Landing sale was inadmissible in that the sale, having occurred in 1992, was "too remote in time to be of a type of data reasonably relied upon by other experts in the field of real estate valuation; or to be otherwise reliable evidence of market value of the [Potted Steer] in 2008." MHTC specifically notes that Kirby stated during cross-examination that the use of such a chronologically remote sale by professional appraisers is "not something that is normally done" and that he "never thought about using a sale that old[.]"

We begin by noting that MHTC mischaracterizes the entirety of Kirby's statements on the subject. When asked if he, as a professional appraiser, would use a sale that old, Kirby initially testified, "To really answer that, I would need to know everything about the circumstances, how unusual was the sale, what am I trying to evaluate, that type of thing." Subsequent questioning prompted this response from Kirby: "It's not something that is normally

8

done, but as I said, *under the circumstances, depending upon the uniqueness of the property, it could be*.  As I recall, in David Nunn's report, he used paired sales from the mid-1990s." (Emphasis added).  Later, during re-cross, Kirby was asked why he did not consider the Link's Landing sale, to which he responded that he "never thought about using a sale that old[.]"

As applicable here, section 490.065.3 provides that:

The facts or data in a particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing and must be *of a type reasonably relied upon by experts in the field* in forming opinions or inferences upon the subject and must be otherwise reasonably reliable.

§ 490.065.3 (Emphasis added).

Evidence of the sale price of property which is sold reasonably near the time of the taking is admissible to aid the triers of fact in determining the compensation to which the owner is entitled for the taking of his property, and the trial court has considerable discretion in determining whether this test of admissibility is met.

***State ex rel. Missouri Highway & Transp. Comm'n v. Sisk***, 954 S.W.2d 503, 509-10 (Mo.App. W.D. 1997).

MHTC relies on ***Sisk***, which upheld the exclusion of evidence concerning a real estate sale that occurred twenty years prior.  *See **id.*** (noting that the exclusion of a similarly remote sale—23 years—had been upheld in ***Shelby County R–IV School District v. Herman***, 392 S.W.2d 609, 614 (Mo. banc 1965)).

We find ***Sisk*** inapposite.  Here, the trial court, in its "considerable discretion," ***id.***, admitted rather than excluded the challenged evidence.  Nothing in ***Sisk*** stands for the proposition that a real estate sale is rendered inadmissible for comparison purposes based solely upon its age.  The correct inquiry, as MHTC seems to recognize, is whether the sale used for

9

comparison purposes (the Link's Landing sale in this case) is "of a type reasonably relied upon by experts in the field in forming opinions[.]" *See* § 490.065.3.

To that end, various witnesses testified before the trial court that the Potted Steer was "unique" specifically due to its location on Highway 54, its lake frontage, and its proximity to the Grand Glaize Bridge. Mr. Boer noted that the Link's Landing sale property shared similar features. As detailed above, Kirby testified that a sale as old as the Link's Landing sale was not foreclosed for use by professional appraisers simply because of its age. To the contrary, Kirby indicated that such a sale could be utilized "depending upon the *uniqueness* of the property[.]" (Emphasis added). The record reflects the trial court also thoroughly considered this evidence, and the objections of MHTC. We are unable to find that the trial court abused its discretion under the facts presented here. There was no abuse of discretion in admitting the fact and amount of the Link's Landing sale. Point II is denied.

### Point III – No Abuse of Discretion During Closing Arguments

In its final point, MHTC challenges certain comments by the Boers' counsel during closing argument. The following additional facts are relevant to this point.

As part of its closing argument, MHTC's counsel argued to the jury that

one of the things [Boers' counsel] mentioned during voir dire is this case is about value. It's not about sentiment, it's not about business loss. There's other money for that that's available. This is about the property. This is about the fair market value of that property.

Thereafter, during the Boers' closing argument, counsel stated:

[MHTC's counsel] said in his closing argument that you're not to consider business loss; and that part isn't offensive to me, but his next statement is. He said that will be taken care of, that's already taken much, there's other ways of taking care of that. That is just absolutely not true. *There is nobody compensating Joe Boer and Mary Boer for the loss of the Potted Steer business*.

(Emphasis added).

10

MHTC's counsel objected, arguing that any reference to business losses was improper. The trial court overruled the objection, noting that MHTC's counsel had "opened the door" when he had stated, "There's other money for [business loss] that's available."

Continuing with his closing argument, Boers' counsel then stated:

> *There is no compensation paid to the Boers for the loss of this Potted Steer business and the fact that it had to close*. What the law says is that -- the law assumes that an owner can simply move that business somewhere else, so what we're telling Joe Boer at age 75, now 79 years old, *you don't get compensated for the Potted Steer business*, you can take it and move it and locate it somewhere else.
>
> We're not asking you for compensation for that loss. *That loss is not going to be compensated for*, but we are asking you to give him the benefit of the doubt on the value of the property and the value of the land.

(Emphasis added).

MHTC asserts the trial court's ruling was an abuse of discretion. In doing so, MHTC characterizes the above italicized statements as "inflammatory and misleading" because the statements suggested to the jury that the Boers "should also have been compensated for alleged loss of business."

"It is the general rule in Missouri condemnation cases that business profits are inadmissible evidence of the value of land on which a business is located." ***State ex rel. Missouri Highway & Transp. Comm'n v. Musterman***, 856 S.W.2d 121, 123 (Mo.App. E.D. 1993). However, a party who opens up a subject cannot object to its further development, even though the subject is otherwise improper. ***State ex rel. Missouri Highway & Transp. Comm'n v. Matula***, 910 S.W.2d 355, 362 (Mo.App. E.D. 1995).

Here, the trial court correctly observed that MHTC's counsel opened the door to the statements of which it complains. The record reflects that MHTC's counsel informed the jury that "other money" was available to compensate the Boers for their business. The Boers'

11

counsel was permitted to address this suggestion in rebuttal. *See id.* In doing so, counsel made no suggestion that the Boers "should also have been compensated for alleged loss of business[,]" as MHTC asserts. Rather, counsel informed the jury that the Boers would not receive compensation for their business loss and explicitly reminded the jury that, "We're not asking you for compensation for that loss." There was no abuse of discretion by the trial court in permitting Boers' counsel to rebut the argument about business loss and "other money" available for that. Point III is denied.

The trial court's judgement is affirmed.

WILLIAM W. FRANCIS, JR., J. - AUTHOR

DON E. BURRELL, JR., P.J. – CONCURS

NANCY STEFFEN RAHMEYER, J. – CONCURS